UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WAYNE CRISP and DONNA CRISP, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-371 RM |
| | ) | |
| I/N TEK, L.P.; III TEK, INC.; | ) | |
| and NS TEK, INC., | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

This cause is before the court on the motion of I/N Tek, L.P., III Tek, Inc., and NS Tek, Inc. for summary judgment on the claims contained in the amended complaint of Wayne Crisp and Donna Crisp. With their response to the motion, the Crisps filed a motion to strike the Affidavit of James Vargo, which the defendants submitted in support of their summary judgment motion. For the following reasons, the court denies the plaintiffs' motion to strike and grants the defendants' motion for summary judgment.

I. FACTS

The facts of the case, viewed in the light most favorable to the plaintiffs, are as follows: Wayne Crisp worked as a professional truck driver for 25 years and at all times relevant to this action was employed by Eaglebrook, Inc. Mr. Crisp's duties for Eaglebrook included driving a truck transporting and delivering acid

and retrieving waste products from a storage facility I/N Tek owned in New Carlisle, Indiana. Mr. Crisp says that over the course of three years, he made as many as 300 deliveries and pick-ups at the I/N Tek facility and was very familiar with the area.

On July 13, 2003, Mr. Crisp arrived at I/N Tek to deliver a load of acid and discovered that his normal offloading area was undergoing maintenance and had been marked off with yellow tape. Mr. Crisp couldn't park his truck in his usual location, so he contacted his employer to discuss the situation. Mr. Crisp was told to contact another Eaglebrook driver who had made a recent delivery to the facility. Mr. Crisp called the other driver and learned that location of the taped-off area would require him to park in a different area and carry his off-loading hose across a set of railroad tracks, which by Mr. Crisp's estimate involved carrying a 60-pound hose a distance of approximately 30 feet. Mr. Crisp says he had never unloaded this way before.

Mr. Crisp says that before beginning his work, he made an assessment of the area and looked for any notes or warnings left by I/N Tek employees, but found none. He reports that the roadway and floors were dry and the lighting conditions were good. Mr. Crisp says he determined that he would be required to position the hose in a U-shape, rather than the normal procedure where the hose simply lies straight. Mr. Crisp says he also recognized that he would have to walk and drag his hose over the railroad tracks.

Mr. Crisp says that even though he didn't see any conditions in the area that caused him concern, he fell while carrying the hose across the premises. According to Mr. Crisp, he got his left foot caught on the railroad track and didn't have time to get his right foot planted before he ended up on his back. Mr. Crisp maintains the defendants breached their duty of care when they didn't warn him that carrying his hose across railroad tracks that were elevated some two inches above the ground posed an unreasonable risk of harm to him as an business invitee. The Crisps say the defendants' negligence caused Mr. Crisp to be injured.

Mr. and Mrs. Crisp filed suit claiming that I/N Tek, III Tek, and NS Tek were negligent by failing to provide a safe ingress and egress area for business invitees, failing to warn its business invitees of dangerous conditions, and maintaining hazardous conditions. Mr. Crisp claims his fall and resulting injuries were a direct and proximate result of the defendants' negligence and Mrs. Crisp claims that the defendants' negligence deprived her of her husband's income and services. The Crisps seek damages for their injuries, medical expenses, lost wages, and pain and suffering.

The defendants have moved for summary judgment, arguing, first, that III Tek and NS Tek are not the owners of and had no control over the subject premises and thus owed no duty to Mr. Crisp, and, second, that I/N Tek didn't breach any duty owed to Mr. Crisp. I/N Tek maintains that Mr. Crisp's injuries were caused by his own negligence and not by any actions or inactions on the part of the company.

## II. MOTION TO STRIKE

The Crisps ask the court to strike certain evidence the defendants submitted in support of their summary judgment motion, specifically the transcript of a recorded statement taken on August 6, 2003 by James Vargo, a field representative for the third party investigation unit of Liberty Mutual Insurance Company, when Mr. Vargo interviewed Mr. Crisp about his fall at I/N Tek. *See* Deft. Exh. C. The Crisps say the transcript should be stricken because the statement is inadmissible hearsay, the tape wasn't properly authenticated, and the statement is protected by the insured/insurer privilege. The Crisps argue that Mr. Vargo's affidavit (Deft. Exh. F) should be stricken, too, because the affidavit wasn't filed with the defendants' summary judgment motion and new evidence can't be submitted in a reply brief.

### *Vargo Affidavit*

The Crisps are mistaken about the timeliness of Mr. Vargo's affidavit. The summary judgment record shows that Mr. Vargo's affidavit was initially filed as Exhibit F to the defendants' summary judgment motion. *See* Docket 32, Attachment 8. The defendants filed the affidavit again as an exhibit to their response to the Crisps' motion to strike. *See* Docket 36, Attachment 1. The Crisps are correct that arguments first raised in a reply brief are deemed waived, *see* Hart v. Transit Mgmt. of Racine, Inc., 426 F.3d 863, 867 (7th Cir. 2005), but Mr. Vargo's affidavit wasn't first filed in a reply brief. The affidavit was filed in

4

conjunction with the summary judgment motion, so its subsequent submission in support of the defendants' response to the motion to strike doesn't constitute new evidence and doesn't provide justification for striking the affidavit. The Crisps' motion to strike Mr. Vargo's affidavit is denied.

### Written Transcript

The Crisps have advanced three arguments in support of their request to strike the written transcript of Mr. Crisp's statement: the statement constitutes inadmissible hearsay; the tape has not been properly authenticated; and the statement is subject to an insurer-insured privilege. The Crisps say, too, that Mr. Crisp doesn't remember the insurance representative coming to his house or giving the statement.

### (1) Hearsay Objection

The Crisps first claim the transcript should be stricken as inadmissible hearsay. Federal Rule of Evidence 801 provides that a statement is not hearsay if the statement is offered against a party and is "the party's own statement, in either an individual or representative capacity." FED. R. EVID. 801(d)(2)(A). The statement being offered is that of Wayne Crisp, the offeror's party-opponent, so the transcript of that statement doesn't constitute hearsay, and the motion to strike on this ground is denied.

5

*(2) Authentication of the Tape*

The Crisps next claim that the transcript should be stricken because the tape recording hasn't been properly authenticated. When considering a summary judgment motion, "the court may consider any material that would be admissible or useable at trial, including properly authenticated and admissible documents or exhibits." Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (internal quotations and citations omitted). Exhibits may be authenticated by evidence that is "sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). Authentication evidence includes the testimony of a witness who possesses knowledge that a matter is what it is said to be. FED. R. EVID. 901(b)(1).

The defendants maintain that the transcript of Mr. Crisp's statement is admissible because James Vargo's affidavit[1] properly authenticates it. Mr. Vargo states in his affidavit that

- he works as a field representative for the third party investigation unit of Liberty Mutual Insurance Company conducting investigations of third party accidents against insured clients of Liberty Mutual, Vargo Aff., ¶ ¶ 1-2;

- he was assigned to investigate a claimed accident that occurred on July 13, 2003 at the I/N Tek facility involving Wayne Crisp, Vargo Aff., ¶ 3;

---

[1] Although Mr. Vargo's affidavit wasn't attached directly to the transcript, which is defendants' Exhibit C, the affidavit was submitted as Exhibit F to the defendants' summary judgment motion.

- he called Mr. Crisp to set up a convenient time for an interview, which the men agreed would be conducted at the Crisps' home on August 6, 2003, Vargo Aff., ¶ 3;

- he examined his tape recorder before arriving at the Crisps' home to confirm that it was in proper working condition, Vargo Aff., ¶ 6;

- he advised Mr. Crisp prior to the interview that Mr. Crisp was under no obligation to cooperate if he chose not to, Vargo Aff., ¶ 5;

- he interviewed Mr. Crisp at the Crisps' home on August 6, 2003 and tape-recorded Mr. Crisp's statement, as required by Liberty Mutual, Vargo Aff., ¶ 3;

- he thereafter arranged to have the tape recording transcribed at Liberty Mutual's Wausau, Wisconsin office, Vargo Aff., ¶ 8; and

- he reviewed the tape recording and the transcript and attests that the transcript is a complete and accurate reproduction of the interview, Vargo Aff., ¶ 9.

Mr. Vargo's affidavit satisfies the authenticity requirements of the federal rules.

The Crisps also note that Mr. Crisp testified at his deposition that he thought the transcript contains "a lot of questionable stuff," but his statement is insufficient to establish that the transcript is inaccurate. The Crisps haven't offered an alternate version of any disputed portion of the transcript, *see* United States v. Howard, 80 F.3d 1194, 1199 (7th Cir. 1996) (if parties can't agree or stipulate to a transcript, "then each side should produce its own version of the

disputed portions"), or sought more time to prepare an alternative version. *See generally* FED. R. CIV. P. 56(f). Mr. Crisp says he doesn't remember a man coming to his house and taking his statement, but the Crisps haven't argued that Mr. Vargo didn't conduct or record the interview with Mr. Crisp. In fact, Mrs. Crisp acknowledged that a man came to their house and took a tape-recorded statement from her husband a week or two after his fall. D. Crisp Dep., at 63-64.

Based on Mr. Vargo's affidavit authentication of the transcript, and because the Crisps haven't presented evidence sufficient to raise a genuine question as to the authenticity or reliability of the tape or the accuracy of the transcript, the motion to strike on the grounds of improper authentication is denied.

### *(3) Insured/Insurer Privilege*

Finally, the Crisps argue that the tape recording of Mr. Crisp's statement should be stricken under the insured–insurer privilege. The Crisps claim, based on Richey v. Chappell, 594 N.E.2d 443 (Ind. 1992), that the insured–insurer privilege bars the defendants' reliance on the tape-recorded statement in support of their request for summary judgment.

Federal Rule of Evidence 501 provides that in a civil action governed by state law, the privilege of a person is determined in accordance with state law. Indiana law, which governs this dispute, provides that when a policy of insurance "requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made on the basis

8

of a claim by a third party are protected from disclosure." <u>Richey v. Chappell</u>, 594 N.E.2d at 447. Mr. Crisp's statement would not fall within that protection, though, because Liberty Mutual doesn't insure Mr. Crisp; Eaglebrook, Mr. Crisp's employer, is the insured.

Liberty Mutual directed Mr. Vargo, its field representative, to investigate and obtain and preserve evidence of Mr. Crisp's accident for Liberty Mutual's use in protecting the interests of its insured, Eaglebrook, against potential claims by a third-party, Mr. Crisp. Liberty Mutual didn't insure Mr. Crisp, so Mr. Crisp's statement to Mr. Vargo is not protected by the insured–insurer privilege. <u>Cain v. Griffin</u>, 849 N.E.2d 507, 510-511 (Ind. 2006) (recognizing the fiduciary duty an insurance company owes to its insured, but concluding no such duty exists between an insurer and a third-party claimant); <u>Strack and Van Til, Inc. v. Carter</u>, 803 N.E.2d 666, 674-675 (Ind. Ct. App. 2004) ("The [insurer-insured] privilege applies to communications between the insured and its agents to the insurer."). Mr. Crisp's statement that he "may have been required to give a statement to Eaglebrook's insurance company" in connection with his receipt of benefits under Indiana's Worker's Compensation Act doesn't change the fact that Mr. Crisp is not an insured of Liberty Mutual.

The insurer–insured privilege applies to communications an insured makes to its own insurer. <u>Richey v. Chappell</u>, 594 N.E.2d at 447. Mr. Crisp wasn't

insured by Liberty Mutual, and so the insured-insurer privilege doesn't protect his statements. The Crisps' motion to strike the transcript is denied.[2]

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Crull v. Sunderman, 384 F.3d 453, 460 (7th Cir. 2004). "The

---

[2] The Crisps argue that admission of the transcript into evidence creates a question of fact between Mr. Crisp's statement and his deposition testimony. Mr. Crisp told Mr. Vargo in August 2003 that he had been at the I/N Tek site twice on July 12, 2003, the day before his accident, and was familiar with the new layout and, in fact, had offloaded by dragging the hose across the railroad tracks without incident. Crisp Stmt., at 5-6. In August 2006, Mr. Crisp testified at his deposition that he didn't recall having been at the I/N Tek facility on the day before the accident. W. Crisp Dep., at 362. Donna Crisp testified that Mr. Crisp went to work the day before the accident, D. Crisp Dep., at 59-60, but her testimony on this point isn't evidence that Mr. Crisp made a delivery at I/N Tek on the day before to the accident.

Because the transcript of Mr. Crisp's statement is admissible evidence, it must be viewed in the light most favorable to the Crisps, the non-moving parties. Therefore, the court will assume for purposes of deciding the summary judgment motion that Mr. Crisp wasn't at I/N Tek on July 12, 2003, the day before his accident, and was unaware of the new layout and unloading procedure until his arrival at the premises on July 13, 2003.

mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## IV.  DISCUSSION

*Claims Against III Tek, Inc. and NS Tek, Inc.*

The Crisps allege in their amended complaint that I/N Tek, III Tek, and NS Tek were negligent in their duty to Mr. Crisp as a business invitee on their property. III Tek and NS Tek argue that they owed no duty to Mr. Crisp because they are not, and weren't at the time of the incident at issue, owners of the premises where Mr. Crisp was injured and they exerted no control over those premises. The defendants support their claim with the affidavit of Brian Wagner, Quality System and Safety Manager of I/N Tek since 2002, who states that the storage facility at issue "is owned by I/N Tek. The other named defendants, III

Tek, Inc. and NS Tek, Inc., had no ownership rights, duties, interest or control over the area encompassing the storage facility in 2003." Wagner Aff., ¶ 2.

In premise liability cases,

the thread through the law imposing liability upon occupancy of premises is control. The reason the law imposes liability on the person who controls the property is self-evident: only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring.

Thayer v. James Whitcomb Riley Festival Ass'n, Inc., 802 N.E.2d 7, 11 (Ind. Ct. App. 2003) (internal citations and quotations omitted).

The Crisps haven't addressed or challenged the claim of III Tek and NS Tek that they didn't own or have any control over the I/N Tek facility or premises at the time of Mr. Crisp's accident, nor have the Crisps offered any evidence to the contrary. III Tek and NS Tek have established that they had no control over the New Carlisle facility and thus owed no duty to Mr. Crisp. *See* Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004) ("In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred."); *cf.* Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732, 745 (7th Cir. 1999) ("Indiana courts have found [] a duty exists when a defendant controls the instrumentality over which the question of an alleged duty arises."). "Absent a duty owed to a plaintiff by the defendant, there can be no actionable negligence." Downs v. Panhandle E. Pipeline Co., 694 N.E.2d

1198, 1202 (Ind. Ct. App. 1998). The two companies are entitled to summary judgment on the Crisps' claims.

*Claims Against I/N Tek, L.P.*

The Crisps claim I/N Tek was negligent in its operation of its New Carlisle facility and its failure to warn Mr. Crisp of dangerous conditions at the site and provide a safe work area resulted in his injuries. The Crisps say I/N Tek had a duty to warn Mr. Crisp that the raised railroad tracks within the facility would pose an unreasonable risk to him as he tried to drag his 60-pound hose across the tracks. The Crisps maintain that the defendants are not entitled to summary judgment because disputed questions of fact exist as to whether the defendants breached their duty to Mr. Crisp and whether that breach was the proximate cause of his injuries.

Even though "summary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact . . . whether the evidence produced by a plaintiff is sufficient to establish a cause of action for negligence is a question of law to be decided by the court." Coffman v. PSI Energy, Inc., 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) (internal citations omitted). Under Indiana law, the Crisps' claim of negligence requires them to establish the following elements: (1) a duty owed by I/N Tek to the Crisps; (2) a breach of that duty; and (3) injury to the Crisps proximately caused by the breach. Pisciotta v. Old National Bankcorp,

499 F.3d 629, 635 (7th Cir. 2007); Estate of Heck ex rel. Heck v. Stoffer, 786

N.E.2d 265, 268 (Ind. 2003).

The duty owed by I/N Tek to Mr. Crisp depends upon Mr. Crisp's status on

the property. Salima v. Scherwood South, Inc., 38 F.3d 929, 931 (7th Cir. 1994)

(*citing* Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991)). I/N Tek acknowledges

that as owner of the New Carlisle facility it owed the following duty to Mr. Crisp,

a business invitee:

> A possessor of land is subject to liability for physical harm caused to
> his invitees by a condition on the land if, but only if, he:
>     (a) knows or by the exercise of reasonable care would discover
> the condition, and should realize that it involves an unreasonable
> risk of harm to such invitees, and
>     (b) should expect that they will not discover or realize the
> danger, or will fail to protect themselves against it, and
>     (c) fails to exercise reasonable care to protect them against the
> danger.

Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991) (*quoting* RESTATEMENT (SECOND)

OF TORTS § 343 (1965)). Section 343A of the Restatement, which is to be read along

with § 343, further provides that

> A possessor of land is not liable to his invitees for physical harm
> caused to them by any activity or condition on the land whose danger
> is known or obvious to them, unless the possessor should anticipate
> the harm despite such knowledge or obviousness.

*See also* Parojcic v. Bethlehem Steel Corp., 128 F.3d 601, 603 (7th Cir. 1997)

(under Indiana law, "a landowner is liable for reasonably foreseeable injuries . .

. caused by hazardous instrumentalities maintained by the landowner on the

landowner's premises"); <u>Burrell v. Meads</u>, 569 N.E.2d at 640 ("This Court has used the definition in § 343 in resolving premises liability cases.").

Thus, I/N Tek had a duty to keep its property in "a reasonably safe condition," <u>Ozinga Transp. Sys., Inc. v. Michigan Ash Sales, Inc.</u>, 676 N.E.2d 379, 384 (Ind. Ct. App. 1997), and would be liable to Mr. Crisp only "if it should have expected that [Mr. Crisp] would not realize the danger posed by the [railroad tracks] or would fail to protect himself against that danger." <u>Parojcic v. Bethlehem Steel</u>, 128 F.3d at 603-604. A landowner "is not liable for injuries that are caused by conditions that are known or obvious unless the landowner can anticipate that injury despite the obviousness of the risk." <u>Carter v. American Oil Co.</u>, 139 F.3d 1158, 1164 (7th. Cir. 1998); <i>see also</i> <u>Davis v. Hoosier Energy Rural Elec. Coop., Inc.</u>, 19 F.3d 365, 369 (7th Cir. 1994) (under Indiana law, liability exists "only if it was reasonably foreseeable that [plaintiff] would fail to protect himself against injury").

I/N Tek maintains it didn't breach any duty to Mr. Crisp because nothing on its premises caused an unreasonable risk of harm. The company relies on Mr. Crisp's testimony to establish his familiarity with the facility: Mr. Crisp testified he had been to the I/N Tek facility numerous times before, W. Crisp Dep., at 38, Crisp Stmt., at 1 ("I've probably been down there over 300 times."); he knew there were railroad tracks inside the facility, W. Crisp Dep., at 167, 171, 415; and he was aware that there was a change of elevation between the tracks and the pavement. W. Crisp Dep., at 185.

I/N Tek also says that Mr. Crisp's statements establish that nothing about the condition of the premises presented an unreasonable risk of harm on the day of the injury: Mr. Crisp stated that the area was dry and there were no problems with the lighting, W. Crisp Dep., at 401; he says he made a visual assessment of his work area to help ensure his safety and didn't observe anything he thought he needed to be concerned with, W. Crisp Dep., at 254, 404, 413; he believed that even though he would have to drag his 60-pound hose a greater distance than usual, he "didn't see it as a safety issue that day," W. Crisp Dep., at 185; and he recognized that he was working under different conditions, "an unlevel surface compared to working a straight surface," Crisp Stmt., at 6. I/N Tek concludes that it would have no reason to believe that Mr. Crisp "would not be able to walk across a clean and dry concrete floor including the area encompassing the railroad tracks without incident on July 13, 2003, just like all of the 300 prior occasions." Memo., at 11.

The Crisps note that Mr. Crisp's regular offloading procedure didn't require him to negotiate the area around the railroad tracks and that on the day in question he had to drag a 60-pound hose across the tracks. They note, too, that there were no posted warnings or instructions about how to negotiate the railroad tracks with the hose. The Crisps maintain there is no evidence that Mr. Crisp had actual knowledge of the risk presented by the tracks, thus creating an issue of fact precluding summary judgment. The court can't agree.

16

Mr. Crisp testified that because his usual offload area was taped off, on a co-employee's advice he pulled his truck into the facility in a position different from his usual hook-up position, which he knew would require him to drag a 60-pound hose about 30 feet instead of the usual 15 feet. Mr. Crisp said that after surveying the area, he determined there wouldn't be a problem:

> Q      . . . Could you see the railroad tracks?
> A      Yeah, I could see.
> Q      You knew there were railroad tracks there, didn't you?
> A      Exactly.
>                              *     *     *
> Q      Did you see the drain?
> A      Knew the drain.
>                              *     *     *
> Q      Did you look at the pavement?
> A      I looked at the surrounding area, the whole, the whole area of what I was going to have to do or need to do. I said have to do. Need to do to get my job done. And put it together with what I was told to see if I had a problem. I didn't have a problem.
> Q      So the area looked great. You made an assessment of it and you thought it was safe, correct?
> A      I thought it had to be done and I might as well get to doing it. You know, I'm saying that I didn't think I was going to hurt myself. Okay.

W. Crisp Dep., at 414-415. Mr. Crisp testified that before that day he had walked in the area of the railroad tracks and on the ground along the tracks, W. Crisp Dep., at 171, and although he hadn't crossed the tracks with the hose before, he was aware of his surroundings while attempting to drag the hose:

> Sir, when you [are] pulling a 60-pound hose, you're looking at everything. You're looking at the ground. You're looking at the hose. You're looking to where you're trying to get . . . You're doing everything humanly possible to get this job done in a safe manner.

W. Crisp Dep., at 184. Mr. Crisp stated that the area "didn't look like it was anything that would trip [him] up." Crisp Stmt., at 6.

Mr. Crisp explained that he recognized extra work would be involved because of the change in his work area, but said he "didn't feel that [he] was working in an unsafe environment." Crisp Stmt., at 23. Mr. Crisp testified that had he believed there was or would be a problem with his delivery, he could have contacted and complained to his employer, W. Crisp Dep., at 414, or used the telephone available at the facility to contact I/N Tek personnel for assistance, W. Crisp Dep., at 361, but he made no such call. Mr. Crisp acknowledged that he was responsible for his own personal safety:

> Q    Would you agree that you as a professional truckdriver are the first line of defense for your own personal safety?
> A    Yes, sir.
> Q    And being safe on the road in a customer's facility includes looking around seeing what the conditions are so that you can take safe work positions or drive your vehicle in a safe manner?
> A    You do the best you can, sir.

W. Crisp Dep., at 280-281; *see also* W. Crisp Dep., at 254 ("That's part of my job to be safe anywhere I'm at."); Crisp Stmt., at 12 ("[A]s a truck driver . . . safety is [] first and foremost, I mean, that's first.").

Mr. Crisp's testimony establishes that the railroad tracks were readily visible, he was aware of their presence, he knew the rails were raised above ground level, he researched the area before he began working, and he decided to continue his duties despite the presence of the railroad tracks. Mr. Crisp testified that as an experienced truck driver he knew that he had to be responsible for his

own safety. He testified that he didn't complain to anyone about the premises because he had assessed the situation and determined that there wouldn't be a problem. Mr. Crisp's own statements show that I/N Tek couldn't have expected or foreseen that Mr. Crisp would fail to protect himself from any danger posed by the railroad tracks at the facility. *See* Parojcic v. Bethlehem Steel Corp., 128 F.3d 601 (7th Cir. 1997) (concluding no breach of duty where plaintiff's own statement demonstrated that property owner could have reasonably expected that plaintiff would discover danger to which he was exposed and protect himself from it); Ozinga Transp. Sys. v. Michigan Ash Sales, Inc., 676 N.E.2d 379 (Ind. Ct. App. 1997) (affirming that property owner was not liable because it could not have informed plaintiff of any facts of which he was not already aware).

I/N Tek, then, can't be liable to Mr. Crisp for injuries caused "by his failure to protect himself from known dangers unless it voluntarily assumed responsibility for safety regulation compliance, or was required by law to do so." Davis v. Hoosier Energy Rural Elec. Coop., Inc., 19 F.3d 365, 369 (7th Cir. 1994); *see also* Bateman v. Central Foundry Div., General Motors Corp., 822 F. Supp. 556, 563 (S.D. Ind. 1992) (landowner is liable if he breaches his duty of care to business invitees "gratuitously or voluntarily assumes a duty, or is contractually obligated to perform a duty"). The Crisps haven't pointed to any statute or contract language expanding I/N Tek's duty to keep the premises reasonably safe for its business invitees or establishing that I/N Tek had assumed responsibility for safety regulation compliance by its business invitees.

Mr. Crisp testified that he was aware of the proximity of the railroad tracks to his work area and that the track rails were raised above ground level. He also testified that knew he had to drag a hose across those tracks before he began the offloading process, but believed, based on his assessment of the area, that he could do so safely. The Crisps haven't set forth any evidence demonstrating that a latent defect existed, negligent property maintenance was involved, or that I/N Tek had reason to expect that Mr. Crisp wouldn't discover and avoid any risk posed by the railroad tracks. The Crisps haven't carried their burden of establishing that I/N Tek breached its duty of care by maintaining hazardous conditions and failing to provide Mr. Crisp with safe ingress and egress from the I/N Tek premises.

The Crisps' final claim is that I/N Tek failed to warn Mr. Crisp of dangerous conditions. "A duty to warn is predicated upon the understanding that individuals who have superior knowledge of the dangers posed by a hazard must warn those who lack similar knowledge. When an individual is already aware of the danger, a warning is not necessary." <u>Carter v. American Oil Co.</u>, 139 F.3d 1158, 1164 (7th Cir. 1998). As just discussed, Mr. Crisp was aware of the presence of the railroad tracks on the I/N Tek premises and that the surface surrounding the tracks was uneven: he testified that he had observed that area of the property prior to the day of the accident and was aware on the day of the accident that he would have to walk across the tracks with his hose. Thus, "a warning from [I/N Tek] was not needed because [I/N Tek] couldn't tell [Mr. Crisp] anything he did not know."

20

Watson v. Ziegert, 616 N.E.2d 785, 786 (Ind. Ct. App. 1993); *see also* Coffman v. PSI Energy, Inc., 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) ("an individual is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed").

"In Indiana, a landowner is not liable for injuries that are caused by conditions that are known or obvious unless the landowner can anticipate that injury despite the obviousness of the risk." Carter v. America Oil Co., 139 F.3d 1158, 1164 (7th Cir. 1998). The Crisps haven't presented evidence sufficient to suggest that I/N Tek should have known that Mr. Crisp would disregard a risk posed by crossing the railroad tracks. Even viewing the facts in the light most favorable to the Crisps, the court concludes that they haven't carried their burden of establishing that I/N Tek breached its duty of care to Mr. Crisp, and I/N Tek is entitled to summary judgment on their negligence claim.

*Loss of Consortium Claim*

The Crisps have also advanced a loss of consortium claim on Donna Crisp's behalf in Count II of their amended complaint. Mrs. Crisp claims that because her husband suffered an actionable injury that negatively affected their marital relationship, she is entitled to recover for loss of consortium. The defendants didn't address this claim in their summary judgment motion, but based on the entry of summary judgment for the defendants on Count I of the amended complaint, Mrs. Crisp isn't entitled to the relief she seeks in Count II.

Under Indiana law, "a claim for loss of consortium is derivative in nature and its viability depends upon the validity of the injured spouse's claims." McCreary v. Libby-Owens-Ford Co., 132 F.3d 1159, 1167 (7th Cir. 1997) (*quoting* Watters v. Dinn, 666 N.E.2d 433, 438 (Ind. Ct. App. 1996)); *see also* Kolkman v. Falstaff Brewing Corp., 511 N.E.2d 478, 480 (Ind. Ct. App. 1987) ("Absent an actionable injury to one spouse, the other spouse cannot recover for loss of consortium."). "[I]f the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it." Durham ex rel. Estate of Wade v. U'Haul Int'l, 745 N.E.2d 755, 764 (Ind. 2001). Mrs. Crisp's claim is derivative in nature, and because Mr. Crisp is not entitled to relief on his claim for injuries, Mrs. Crisp's claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The defendants are entitled to judgment on the loss of consortium claim contained in Count II of the Crisps' amended complaint.

## VI. Conclusion

Based on the foregoing, the plaintiffs' motion to strike [docket # 35] is DENIED, the motion of defendants I/N Tek, L.P., III Tek, Inc., and NS Tek, Inc. for summary judgment on Count I of the Crisps' amended complaint [docket # 32] is GRANTED, and the court *sua sponte* enters judgment for the defendants on Count II of the Crisps' amended complaint. The final pretrial conference set for April 30, 2008 and the jury trial scheduled to commence on May 19, 2008 are VACATED,

and the clerk is directed to enter judgment for the defendants and against the plaintiffs on all claims of the amended complaint.

SO ORDERED.

ENTERED: ___ January 25, 2008 __


___ /s/ Robert L. Miller, Jr. _____
Chief Judge
United States District Court